IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

BRENDA S. HUMPHREY,

      Plaintiff,

v.                                CASE NO. 2:09-cv-00792

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Brenda Sue Humphrey (hereinafter referred to as "Claimant"), filed an application for SSI on March 8, 2006, alleging disability as of September 9, 2003, due to back problems, leg pain, a herniated disc on the left side and a ruptured disc. (Tr. at 101-07, 132, 168.)  The claim was denied initially and upon reconsideration.  (Tr. at 61-65, 72-74.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on November 7, 2007, before the Honorable Ronald L. Chapman.  (Tr. at 22-58.)  By decision dated December 14, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at

9-21.)  On June 25, 2009, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision.  (Tr. at 1-5.)  On July 9, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.    Id. §

416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 11.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of low back syndrome and obesity. (Tr. at 11.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any

listing in Appendix 1.  (Tr. at 13.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by an ability to occasionally climb, balance, stoop, kneel and crawl, a need to avoid concentrated exposure to extreme cold and moderate exposure to vibration and to hazards such as unguarded machinery and heights, an inability to bend further than "table top" height, and an inability to do "a lot of bending." (Tr. at 14.)  As a result, Claimant cannot return to her past relevant work.  (Tr. at 19.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as companion, children's attendant, school bus monitor, first aid attendant and day care center worker, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at 21.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

4

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the administrative hearing and at the time of the ALJ's decision. (Tr. at 29.) Claimant graduated from high school. (Tr. at 29.) In the past, she worked as a nurse's aide. (Tr. at 30.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes evidence of record related to Claimant's workers' compensation claim. (Tr. at 174-244.) Claimant injured her back on the job in 2003. (Tr. at 221, 252.) On September 30, 2003, Syed Zahir, M.D. diagnosed lumbosacral sprain, degenerative disc disease L4-5, L5-S1 and possible herniated disc. (Tr. at 249.) Dr. Zahir completed a return to work slip on September 30, 2003, placing Claimant off work through October 6, 2003. (Tr. at

5

250.)

On January 20, 2004, Christopher K. Kim, M.D. examined Claimant related to her low back pain. He noted that an MRI on September 10, 2003, showed lumbar spondylosis at multilevels with questionable herniated disc at L4-5 and L5-S1. X-rays of the lumbar spine showed degenerative disc disease. (Tr. at 260.) Straight leg raising was negative at 90 degrees in a sitting position. Claimant had mild tenderness to palpation over the left lumbar region and left hip bursa region. Deep tendon reflexes were two plus in the knees, but were absent in the ankle on the left side. The right side was one plus. Sensory exam showed decreased sensation to light touch, temperature and pinprick in the left leg. Motor strength in the lower extremities was 5/5. Dr. Kim's impression was chronic lower back pain with pain radiating into the left lower extremity due to a work-related injury. Claimant "has a bulging disc versus herniation at two levels at L4-5 and L5-1." (Tr. at 263.) Dr. Kim recommended a left lumbar transforaminal epidural steroid injection at L4-L5 and S1. (Tr. at 263.)

The record includes treatment notes from Chiropractor Frank L. Brach and others at Kominsky Chiropractic dated 2003 and 2004. (Tr. at 265-307.)

On April 19, 2004, Chiropractor Michael R. Condaras completed an IME report related to Claimant's workers' compensation claim and diagnosed lumbosacral strain/sprain secondary to multi-level disc

bulges at L2-L3, L3-L4, L4-L5 and L5-S1 and degenerative changes, especially at L4-L5, L5-S1. (Tr. at 312.) He recommended a total impairment for workers' compensation purposes of ten percent. (Tr. at 313.)

The record includes treatment notes and other evidence from Plateau Medical Center dated September 10, 2003, through February 22, 2006. (Tr. at 349-67.) On September 10, 2003, Claimant underwent x-rays of the lumbar spine, which showed degenerative changes at L4-5 and L5-S1 levels. (Tr. at 367.) Claimant underwent a lumbar spine MRI on October 9, 2003, and it showed lumbar spondylosis with multilevel disc bulges at L5/S1, L4/5, L3/4 and L2/3. The disc bulges were diffuse in nature and there was no evidence of focal disc herniations. (Tr. at 363.) An MRI of the thoracic spine on December 28, 2004, showed no evidence of disc herniation or spinal canal stenosis and very small central disc bulge at T6-7. (Tr. at 361.) A bilateral lower extremity doppler arterial ultrasound showed no evidence of hemodynamically significant stenoses at the lower extremities using systolic criteria, triphasic flow throughout and normal ankle/brachial indices. (Tr. at 362.) X-rays of the lumbar spine on August 29, 2005, showed moderate degenerative type changes, best seen at L5-S1. There were degenerative changes to a lesser extent at L4-L5. (Tr. at 355.) An MRI on September 22, 2005, showed multilevel canal neural foraminal narrowing, most pronounced at L3-4 level,

7

where there was a moderate sized central disc protrusion with a lateral component causing canal and left neural foraminal narrowing. (Tr. at 354.) On February 22, 2006, Claimant underwent bilateral lower extremity doppler arterial ultrasound, which showed no evidence of hemodynamically significant stenoses at the lower extremities using systolic criteria, triphasic flow throughout, normal ankle/brachial indices. (Tr. at 350.)

On April 10, 2006, Claimant underwent a myelogram and CT scan of the lumbar spine. The impression was:

> 1. Herniated nucleus pulposus L2-3, broad based, largely central in location without evidence of specific side predominance.
> 2. Disc herniation with slight extrusion of the disc at the L3-4 level with the disc extruded along the posterior/superior aspect of L4. Left lateral component of disc bulging is also present at this level.
> 3. Degenerative disc disease at L4-5 with broad-based disc bulge and facet arthropathy without evidence of significant nerve root sheath impingement or displacement. Vacuum disc phenomenon present at this level.
> 4. Degenerative disc disease and degenerative joint disease L5-S1 without evidence of significant impingement upon adjacent neural structures although there is significant facet arthropathy bilaterally at the L5-S1 level. Bilateral recesses are narrowed related to this process.

(Tr. at 374.)

On May 24, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations, and that she should avoid even moderate exposure to vibration and hazards and concentrated exposure to extreme cold.

8

(Tr. at 376-83.)

On August 2, 2006, J.O. Othman, M.D. completed an electromyogram ("EMG") and nerve conduction studies ("NCS") of Claimant's lower extremities. The EMG and NCS of both the lower extremities and the lumbar paraspinals revealed fibrillation and positive waves involving the lower lumbar region bilaterally consistent with bilateral L5-S1 radiculopathy. The right side was worse than the left. (Tr. at 385.)

The record includes treatment notes from Serafino S. Maducdoc, Jr., M.D. dated January 16, 2001, through August 28, 2006. (Tr. at 386-410.)

The record includes treatment notes and other evidence from Adnan Silk, M.D. dated December 26, 2005, through November 17, 2006. (Tr. at 411-23.) On December 26, 2005, Dr. Silk examined Claimant at the request of Dr. Maducdoc. He diagnosed low back pain and left leg pain due to herniated disc at L3-4. He recommended diagnostic workup. (Tr. at 423.) On February 6, 2006, Dr. Silk saw Claimant for follow up. Claimant continued to have pain in her back and left leg. Claimant had tenderness in the lumbar area. Straight leg raising was sixty degrees bilaterally. Knee jerk and ankle jerk were hypoactive one plus on both sides. Dr. Silk was waiting on approval for a myelogram. (Tr. at 417.) On March 20, 2006, Dr. Silk noted that he still had not received approval for the myelogram. He stated that Claimant "has been

disabled and she is not working and she is not improving." (Tr. at 416.)  On examination, Claimant had tenderness in the lumbar area in the midline and over the left hip.  Bending forward was about seventy degrees.   Straight leg raising was seventy degrees bilaterally.  Knee jerk and ankle jerk were active two plus on both sides.  (Tr. at 416.)

On April 10, 2006, Dr. Silk examined Claimant and found her condition unchanged.  He admitted her to the hospital for a lumbar myelogram.  (Tr. at 415.)  On April 27, 2006,  Dr. Silk noted that the myelogram showed lumbar spondylosis and bulging disc at L2-3, L3-4 and L4-5.  The lumbar CT scan showed herniated disc at L2-3 and severe bulging disc at L3-4 and L4-5.  He stated that Claimant "has been disabled, she is not working."  (Tr. at 414.)   On examination, Claimant had tenderness in the lumbar area in the midline.  Bending forward was about seventy degrees. Straight leg raising was about seventy degrees bilaterally.  Knee jerk and ankle jerk were hypoactive one plus on both sides.  (Tr. at 414.)  Dr. Silk recommended an EMG and NCS to rule out any root compression. (Tr. at 414.)

On June 8, 2006, Claimant's complaints continued.  Dr. Silk's physical examination was unchanged.  Dr. Silk opined that Claimant "remains disabled, I doubt that she is going back to work in the future." (Tr. at 413.)  Dr. Silk again recommended an EMG and NCS. (Tr. at 413.)  On August 16, 2006, Dr. Silk noted that an EMG and

NCS showed bilateral radiculopathy at L5-S1 more on the right side.
Dr. Silk continued to state that Claimant was disabled.   In
addition, Claimant indicated to Dr. Silk that "she is not going
back to work."  (Tr. at 412.)   On November 17, 2006, Dr. Silk
stated that "[a]t this time I feel there is no strong indication
for surgery."  (Tr. at 411.)   The physical examination was
unchanged, and Dr. Silk stated that he would see Claimant on an as
needed basis.  (Tr. at 411.)

On December 22, 2006, a State agency medical source completed
a Physical Residual Functional Capacity Assessment and opined that
Claimant could perform light work with occasional postural
limitations and a need to avoid concentrated exposure to extreme
cold, vibration and hazards.  (Tr. at 424-31.)

The record includes additional treatment notes from Dr. Silk.
On May 16, 2007, Claimant reported continued pain in her back and
legs.  Claimant reported that recently, she had developed severe
pain in her neck with radiating pain to the left shoulder and left
arm without any injury.  Claimant had minimal symptoms on the right
side.   On examination, Claimant had tenderness in the posterior
aspect of the neck and between her shoulder.  Turning her head from
side to side produced neck pain, but she could elevate the shoulder
very well.  Claimant had good flexion and extension of both arms.
Reflexes were active on the right and hypoactive on the left.
Claimant had decreased sensation to pinprick in the lateral aspect

11

of the left arm. Dr. Silk recommended a cervical MRI. (Tr. at 441.)

The record includes additional treatment notes from Dr. Maducdoc dated June 15, 2006, through November 1, 2007. (Tr. at 444-49.) On June 15, 2006, Dr. Maducdoc completed a Medical Assessment of Ability to do Work-Related Activities (Physical). He opined that Claimant could lift ten pounds frequently and occasionally. In support of his opinion, he cited Claimant's bulging disc at multiple levels with "left L3-4 impingement nerve root L4-5 nerve root sheath impingement." (Tr. at 453.) He stated that standing/walking was limited to two hours in an eight-hour workday and that sitting was limited to two hours in an eight-hour workday. He opined that Claimant had postural limitations at the occasional level. (Tr. at 454.) He opined that Claimant's ability to reach, handle and push/pull were limited. (Tr. at 455.)

On May 3, 2007, Dr. Maducdoc completed a West Virginia Department of Health and Human Resources Medical Review Team, General Physical (Adults) form on which he opined that Claimant had herniated nucleus pulposis of the lumbar spine, degenerative arthritis and bunions in both feet. He opined that Claimant was unable to work for one year. (Tr. at 452.)

Claimant submitted evidence to the Appeals Council that is dated in 2009, well after the ALJ's decision. (Tr. at 457-65.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to afford significant weight to the opinion of Dr. Maducdoc, Claimant's treating physician. (Pl.'s Br. at 8-12.)

The Commissioner argues that substantial evidence supports the ALJ's determination that Claimant was able to perform a range of light work and that the ALJ did not err in failing to afford significant weight to the opinion of Dr. Maducdoc. (Def.'s Br. at 3-17.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2) (2007). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(d)(2) (2007).

Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 416.927(d)(3), (4), and (5)

13

adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 416.927(d)(2).

Under § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

In his decision, the ALJ explained that he considered the

14

evidence of record from Dr. Maducdoc, including the Medical
Assessment of Ability to Do Work-Related Activities ("Assessment")
completed on July 6, 2006, and the General Physical (Adults) form
that Dr. Maducdoc completed in May of 2007 for the West Virginia
Department of Health and Human Resources. (Tr. at 17.) Regarding
the Assessment, the ALJ explained that despite Dr. Maducdoc's
familiarity with Claimant's case, he could not give significant
weight to Dr. Maducdoc's opinions because they are not supported by
the medical evidence and are inconsistent with other substantial
evidence as follows:

(1) Dr. Maducdoc cited nerve root impingement at L3/L4, but the
imaging evidence shows impingement on the nerve root sheath, but
not the nerve root;

(2) Dr. Maducdoc's Assessment would allow Claimant to sit two
hours, stand two hours and walk two hours during an eight-hour
workday, which would not permit Claimant to complete a normal
workday.  Claimant testified that she may lie down during the day
if she gets tired, but she did not indicate she has to lie down
during the day regularly every day.  By her own testimony, Claimant
refutes Dr. Maducdoc's sitting, standing and walking limitations;

(3) Dr. Maducdoc offered no medical evidence or rationale for
limitations on reaching and handling; and

(4) Dr. Maducdoc's Assessment is internally inconsistent.  Despite
the exertional and postural limitations that he assessed, he did

15

not propose any restrictions against exposure to hazards or aggravating environmental factors. In addition, Claimant's ability to sustain climbing (occasionally or one-third of an eight-hour workday) exceeds her ability to walk (two hours). (Tr. at 17.)

The ALJ also explained his reasons for rejecting Dr. Maducdoc's opinion on the General Physical (Adults) form:

> Dr. Maducdoc opined that the claimant was not able to work full-time at her customary occupation or like work and further, that she was not able to perform other full-time work. In support of his opinion, Dr. Maducdoc cited a major diagnosis of herniated nucleus pulposus in the lumbar spine and minor diagnoses of degenerative arthritis (of unspecified site and presumably in the lumbar spine) and bunions in both feet. The report indicates that the only conditions that result in significant symptoms that contribute to the claimant's disability are the discogenic disease and degenerative disc disease of the lumbar spine: Dr. Maducdoc cited pain in the low back and pain radiating into both legs, worse on the right side. The medical findings that Dr. Maducdoc provided fail to ... support limitations of disabling severity.

(Tr. at 17.)

The ALJ went on to analyze and weigh the other evidence of record, including that from Dr. Silk and the State agency medical sources. The ALJ afforded significant weight to the opinions of the State agency sources. (Tr. at 18-19.)

The ALJ properly weighed the evidence of record from Dr. Maducdoc in keeping with the above-referenced regulation and caselaw, and his findings are supported by substantial evidence. The ALJ's reasons, cited above, for rejecting the evidence of record from Dr. Maducdoc take into consideration the key issues of

16

whether his opinions are supported by clinical and laboratory diagnostic techniques and consistent with the remaining evidence of record. Dr. Maducdoc supports his opinion, in part, by reference to impingement of the nerve root (Tr. at 453), yet as the ALJ points out, Claimant had impingement of the nerve root sheath, but not the nerve root. (Tr. at 17, 370, 373.) Indeed, the report of Claimant's myelogram on April 10, 2006, states that there is no "evidence of significant nerve root sheath impingement or displacement." (Tr. at 373.) Furthermore, the ALJ correctly points out that Dr. Maducdoc's Assessment is otherwise largely absent of any explanation as to the medical evidence supporting his limitations, particularly regarding limitations in handling and reaching. (Tr. at 17, 455.) The ALJ did not err in relying on Claimant's own testimony about her need to lie down during the day.

Finally, Claimant argues that the ALJ stated that Dr. Maducdoc's General Physical (Adult) form

> failed to provide support for limitations of disabling severity because the report only contained diagnoses of discogenic disease and degenerative disc disease of the lumbar spine and symptoms of low back pain and radicular pain into both legs even though he found these conditions to be "severe" impairments earlier in his decision.

(Pl.'s Br. at 9.) In fact, the ALJ did find that Claimant had the severe impairments of low back syndrome and obesity, but he rejected Dr. Maducdoc's opinion because the medical findings provided on the form failed to support limitations of disabling severity. This finding is supported by substantial evidence. Like

17

the findings of disability related to Claimant's workers' compensation claim, Dr. Maducdoc's opinion on the General Physical (Adult) form relates to Claimant's eligibility for services from the West Virginia Department of Health and Human Resources. "A decision by any nongovernmental agency or any other governmental agency about whether [a claimant is] disabled or blind is based on its rules and is not [the Commissioner's] decision about whether you are disabled or blind." 20 C.F.R. § 416.904 (2007).

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 14, 2010

Mary E. Stanley
United States Magistrate Judge

18